UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-14040-CR-MARTINEZ/MAYNARD

UNITED STATES OF AMERICA

vs.

SUDIATA NEKET ZANJA STINSON,

    **Defendant.**
_____/

### UNITED STATES' SENTENCING MEMORANDUM

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby files this sentencing recommendation and memorandum in support. The government recommends that the Court issue a sentence at the top of the guideline range, which is 188 months' incarceration.

### BACKGROUND[1]

On December 14, 2022, at around 12:05 p.m., the Indian River County Sheriff's Office ("IRCSO") responded to the drug overdose death of a 24-year-old woman, Individual 1, at an apartment complex in Vero Beach, in the Southern District of Florida. IRCSO promptly began the preliminary investigation and requested the assistance of the DEA.

IRCSO Detective Brandon Dean gained access to Individual 1's Facebook account and then located Facebook messages between Individual 1's account and a Facebook account belonging to Sudiata STINSON ("STINSON" or "Defendant"). The messages revealed that the previous night, STINSON and Individual 1 had arranged two meetings where it appeared that STINSON provided Individual 1 with controlled substances.

---

[1] As the PSI (DE 43) and factual proffer (DE 30) set forth the facts of the instant case, this section will not repeat every such fact.

The conversation began around 5:16 p.m. the night before, on December 13, 2022, and it began with Individual 1 asking for money so that she could buy Xanax. Later that night, around 9:53 p.m., Individual 1 asked for "h," or heroin. Sometime around 10:34 p.m., Individual 1 asked for more, complaining that she was not high. Around 11:33 p.m., Individual 1 was still asking for more, and the two arranged to meet. Based on footage from a neighbor's security camera, Individual 1 visited STINSON's residence that night.

On December 14, 2022, the day that Individual 1 was discovered deceased, law enforcement interviewed Defendant post-Miranda. During that interview, law enforcement informed Defendant that Individual 1 was deceased, and they confronted him with the Facebook messages in which Individual 1 was asking Defendant for drugs. Defendant denied selling drugs and claimed that other people use his phone.[2]

IRCSO and DEA continued investigating Defendant. On April 7, 2023 (Count One), the IRCSO and DEA used a confidential source ("CS") to purchase fentanyl. Prior to the sale, the CS placed a controlled phone call confirming the purchase of 7 grams of fentanyl for $400 and telling STINSON that he/she was on their way to STINSON's house. The CS met with STINSON at his residence in Vero Beach, Florida, and handed STINSON $400. STINSON called out to another individual who was inside the house, who, after a few minutes, came out of the residence and handed the CS the powder fentanyl. The suspected fentanyl was analyzed by the Indian River Crime Laboratory, which confirmed the substance was powder fentanyl with a net weight of 6.41 grams.

On April 11, 2023 (Count Two), the CS purchased more powder fentanyl from STINSON. Prior to the sale, the CS placed a controlled phone call confirming the purchase of 14 grams of

---

[2] On January 23, 2023, a Medical Examiner report was issued concluding that Individual 1 died of fentanyl intoxication, noting the presence of two other substances.

fentanyl for $900 and telling STINSON that he/she was on their way to STINSON's house. The CS met with STINSON at his residence and exchanged $900 for powder fentanyl. During the conversation, STINSON also showed the CS blue pills that he claimed were "pressed"[3] fentanyl 30 milligram pills. The suspected fentanyl was analyzed by the Indian River Crime Laboratory, which confirmed the substance was fentanyl with a net weight of 13.87 grams.

Defendant also distributed substances other than fentanyl on two occasions to the CS, which were not charged. On May 10, 2023, the CS had arranged to purchase an ounce of fentanyl from STINSON for $1,800. The CS met with STINSON in his driveway; however, STINSON claimed that he was short and would make up for it at the next purchase. In exchange for $1,800, STINSON provided to the CS 20.7 grams of what later tested positive for alpha-pyrrolidinoisohexanophenone[4]. On May 16, 2023, the CS obtained approximately 5.25 grams of, what was intended to be, powder fentanyl. STINSON provided this powder as fulfillment of his debt from the previous transaction. The CS met with STINSON at STINSON's residence, and STINSON assured the CS that the substance was fentanyl. The substance later tested positive for alpha-pyrrolidinoisohexanophenone.

On May 30, 2023, DEA and IRCSO executed a federal search warrant at Defendant's residence (23-038-MJ-SMM) (PSI, ¶ 12). After making entry, agents discovered that the residence was being used as a boarding house, and there were multiple other people living in the residence. In the residence, agents recovered fentanyl, methamphetamine, cocaine, morphine, marijuana, synthetic cathinones, prescription pills, and a 9mm semi-automatic pistol (PSI, ¶ 12). Defendant was not charged with any contraband seized during this search.

---

[3] "Pressed" fentanyl pills are pills made to look like oxycodone pills, but are not produced by pharmaceutical manufacturers, and contain fentanyl.
[4] This substance is a positional isomer of alpha-pyrrolidinohexanophenone (α-PHP) and is a schedule I controlled substance

On September 21, 2023, Defendant was charged by Indictment with two counts of distributing fentanyl (DE 1). On February 7, 2024, Defendant pled guilty as charged in both counts of the Indictment (DE 28-30).

Defendant's PSI outlines a long and serious criminal history, as reflected below (PSI, ¶¶ 32-52):

| Case[5] | Sentence | Charges | Disposition |
|---|---|---|---|
| 18CF000703 | 5/26/22 | Trafficking Heroin<br>Trafficking Oxycodone<br>Felon in Possession of Weapon<br>Sale of Heroin<br>Sale of Cocaine<br>Possession of Drugs (x8) | Adj., 54 mos DOC |
| 14CF000824 | 1/23/15 | Possession of Methamphetamine<br>Possession of Morphine | Adj., 31 mos DOC |
| 14CF000811 | 1/23/15 | Sale of Cocaine | Adj., 31 mos DOC |
| 14CF000217 | 1/23/15 | Fleeing or Eluding<br>Reckless Driving | Adj., 31 mos DOC |
| 03CF001137 | 1/24/05 | Sale of Marijuana | Adj., 60 mos DOC |
| 02MM000109 | 8/17/04 | Battery | Adj., 60 days jail |
| 00CF000458 | 10/17/00 | Possession of Cocaine | Adj., 15 mos DOC |
| 99CF000506 | 8/16/99 | Resisting Officer With Violence<br>Battery on LEO<br>Escape | Adj., 1 year jail |
| 99MM000162 | 5/4/99 | Improper Exhibition of Weapon | Adj., 60 days jail |
| 95CF001318 | 5/24/96 | Sale of Cocaine<br>Sale of Cocaine<br>Possession of Cocaine<br>Possession of Cocaine | Adj., 28.6 mos DOC |
| 95CF000495 | 8/30/95 | Sale of Cocaine<br>Possession of Cocaine | Adj., 28.6 mos DOC (after VOP) |

Due to Defendant's criminal history, Defendant qualifies as a career offender under United States Sentencing Guidelines Section 4B1.1(b) (PSI, ¶ 47).

---

[5] Indian River County, FL, unless otherwise noted.

ANALYSIS

Under 18 U.S.C. § 3553(a), the Court must impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes laid out by Congress. While the Court shall consider all of the § 3553(a) factors in determining a sentence, the following will address those factors that are, in the government's view, most relevant:

1. The nature and circumstances of the offense.

As discussed below, fentanyl is an exceedingly dangerous substance, and its lethality is widely understood. Defendant trafficked in this substance, deciding to distribute it to members of his own community, for his own benefit. Fentanyl is a scourge on our communities, both nationally and locally, and Defendant chose to profit from this destruction.

But Defendant's conduct is far worse than most fentanyl dealers. On December 14, 2022, law enforcement brought Defendant to the IRCSO and made it clear that they believe his fentanyl killed a young woman. Law enforcement confronted Defendant with messages between Defendant and Individual 1 and questioned him about his involvement. It was clear from the interview that Defendant was a suspect in the overdose death.

While this information should scare a person out of selling fentanyl, if not drugs altogether, Defendant persisted. Less than five months later, a law enforcement CS bought fentanyl twice from Defendant.

At the very least, Defendant knew that an acquaintance died of a drug overdose and that the police thought he did it. At worst, Defendant knew that this young woman died from fentanyl that he provided. Either way, the fact that Defendant continued to sell this poison into his community demonstrates confounding cruelty.

2. <u>The history and characteristics of the defendant.</u>

For Defendant's entire adult life, he has disregarded the law and sold drugs into our communities. His first adult conviction came at the age of 18, when he was convicted of selling cocaine (PSI, ¶ 32). Defendant was sentenced to 6 months' county jail and probation, which he quickly violated by again selling cocaine (PSI, ¶¶ 32-33). After serving a prison sentence, Defendant was arrested within a year of his release; according to the PSI, Defendant was driving a stolen vehicle when he fled from the police and was convicted of escape, battery on a law enforcement officer, and resisting with violence (PSI, ¶ 35).

Within months of his release from this conviction, Defendant was arrested for possessing cocaine, for which he served 15 months' prison (PSI, ¶ 36). In 2004, Defendant was arrested and convicted of selling marijuana and grabbing a woman by the throat (PSI, ¶¶ 37-38). In 2014, while Defendant was on bond for fleeing or eluding, Defendant sold crack cocaine to a confidential informant and subsequently served a 31-month prison sentence (PSI, ¶¶ 40-41).

In 2018, Defendant was residing with his girlfriend and her three-year-old child. Apparently, Defendant was selling drugs out of this home, because a search warrant revealed over 300 morphine and oxycodone pills, heroin, crack cocaine, many other controlled substances, and a .380 semiautomatic pistol (PSI, ¶ 43). Defendant was sentenced to 54 months' prison (PSI, ¶ 43).

Defendant was on probation for this conviction when he committed the instant fentanyl offenses.

3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to protect the public from further crimes of the defendant.</u>

Defendant has clearly demonstrated that he does not respect the law, that he does not grasp the serious nature of his conduct, and that past prison terms have not deterred him from committing crimes.

Not only does Defendant not respect the law, but he does not respect the value of human life. In 2018, Defendant was sentenced to prison after possessing a gun and selling drugs from a home in which a toddler lived (PSI, ¶ 43). And now, after being confronted with the overdose death of Individual 1, Defendant continued to sell fentanyl.

Incapacitating repeat offenders is a legitimate sentencing goal, <u>Ewing v. California</u>, 538 U.S. 11, 20 (2003), and constitutes "specific deterrence" under 18 U.S.C. § 3553(a), <u>United States v. Irey</u>, 612 F.3d 1160, 1212-13 (11th Cir. 2010). Defendant has served prison sentences of 15 months, 28.6 months, 31 months, 54 months, and 60 months; these sentences have failed to deter Defendant. Defendant was also confronted with the overdose death of Individual 1, and this failed to deter Defendant as well.

Defendant has proved that the only way to deter him from crime is to incapacitate him. Whenever Defendant is released from prison in the future, he will sell drugs. And if the drug available to him is a devastatingly lethal substance that is sowing destruction in his own community, Defendant will sell it. Thus, the Court's only means of protecting the public and deterring Defendant is to keep Defendant incarcerated.

4. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Fentanyl presents a public safety crisis across the nation, and its devastating effects are widely known. According to the U.S. Centers for Disease Control and Prevention ("CDC"), over

76,000 people died in the U.S. of overdosing on synthetic opioids, primarily fentanyl, in 2022, and over 74,700 died in 2023.[6] Fentanyl can be consumed knowingly and unknowingly, because fentanyl is mixed into other drugs or sold as other drugs, such as heroin, cocaine, or counterfeit pills.[7] Because fentanyl is between 50 and 100 times more potent than morphine, a very small dose of fentanyl can be lethal.[8]

While the exact statistics about fentanyl might not be universally known, the danger posed by fentanyl is widely understood. And yet for some reason, there are far too many people willing to sell this venom to their neighbors. Fentanyl is different than other widely available drugs, and the Court should sentence Defendant accordingly in order to deter fentanyl dealers.

For these reasons, the government respectfully recommends that this Court sentence Defendant to the top of the guideline range, which is 188 months' prison.

By way of comparison, the United States offers the following cases for the Court's consideration, which involved similarly situated defendants in the Southern District of Florida who were convicted of drug trafficking offenses. See United States v. Lawrence Oliver Irving, II, 2:23-cr-14021-ROSENBERG (S.D. Fla.) (career offender sentenced to 215 months' imprisonment after pleading guilty to conspiracy to distribute 50 grams or more of methamphetamine, and 40 grams or more of fentanyl; defendant was held accountable for 47.6 grams of fentanyl and 193.3 grams of methamphetamine (actual));[9] United States v. Takaria McCray, 2:21-cr-14002-MIDDLEBROOKS (S.D. Fla.) (career offender sentenced to 188 months' imprisonment after pleading guilty to conspiracy to distribute 28 grams or more of cocaine base and cocaine; defendant

---

[6] See https://www.cdc.gov/nchs/pressroom/nchs_press_releases/2024/20240515.htm, last visited June 3, 2024.
[7] See https://nida.nih.gov/research-topics/fentanyl, last visited June 3, 2024.
[8] Id.
[9] Irving's guideline range was 262 – 327 months.

was held accountable for 112 grams of cocaine base and 400 grams of cocaine);[10] United States v. Christopher Jon Bauer, 22-CR-14068-CANNON (S.D. Fla.) (non-career offender sentenced to 180 months' imprisonment for possession with intent to distribute fentanyl; defendant was held accountable for 280 grams of fentanyl and had a criminal history category of VI).[11]

## CONCLUSION

For the aforementioned reasons, the United States respectfully requests that this Court issue the aforementioned sentence in the instant case.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: s/Justin L. Hoover
Justin L. Hoover
Court ID A5502493
Assistant United States Attorney
Justin.Hoover@usdoj.gov
United States Attorney's Office
101 South US Highway 1, Suite 3100
Fort Pierce, Florida 34950
Telephone: 772-466-0899

---

[10] McCray's guideline range was 188 – 235 months.
[11] Bauer's guideline range was 130 – 162 months.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF to be served on all parties.

                                                *s/Justin L. Hoover*
                                                Justin L. Hoover
                                                Assistant United States Attorney